## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER VALENCIA,** individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>**GENERAL MOTORS LLC, ONSTAR LLC, AND LEXISNEXIS RISK SOLUTIONS INC.,**<br><br>      Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Valencia, individually and on behalf of all others similarly situated, brings this action against Defendants General Motors LLC, OnStar LLC and LexisNexis Risk Solutions Inc. The following allegations are based on Plaintiff's knowledge, investigations of counsel, facts of public record, and information and belief.

### NATURE OF THE ACTION

1. Plaintiff seeks to hold Defendants responsible for the injuries they inflicted on Plaintiff and tens of thousands of similarly situated persons ("Class Members") due to unauthorized collection and dissemination of private information collected by vehicles owned or leased by the Plaintiff and Class Members. For many years, without Plaintiff's or Class Members' consent, Defendants have been collecting from Class Members' vehicles and selling to third parties vast amounts of location and vehicle data (including:

location, speed, direction, breaking and swerving/cornering events, and image and voice data), and other personal identifiable information ("PII").

2.      Through this action, Plaintiff seeks to remedy these injuries on behalf of himself and all similarly situated individuals whose PII was collected and disseminated by Defendants.

3.      Plaintiff seeks remedies including, but not limited to, compensatory damages, treble damages, reimbursement of out-of-pocket costs, and injunctive relief—including a prohibition on unauthorized collection and dissemination of PII by Defendants.

## PARTIES

4.      Plaintiff Christopher Valencia ("Valencia") is a resident of South Gate, California.  He is the owner of a vehicle manufactured by Defendant General Motors LLC, equipped with technology manufactured by Defendant OnStar LLC.

5.      Defendant General Motors LLC ("GM") is an American multinational automotive manufacturing company headquartered in Detroit, Michigan.   GM is listed on the New York Stock Exchange.[1] GM is a Delaware limited liability company headquartered in Detroit, Michigan.[2]

6.      Defendant   OnStar   LLC   ("OnStar")   provides   subscription-based communications, in-vehicle security, emergency services, hands-free calling, turn-by-turn

---

[1] GM, "Investor Relations", https://investor.gm.com/investor-relations (last accessed April 7, 2024).
[2] State of Florida, Division of Corporations,
https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=GENERALMOTORS%20M090000041120&aggregateId=forl-m09000004112-116bf3fa-66a9-4c68-9882-4491b64042e1&searchTerm=%22general%20motors%22&listNameOrder=GENERALMOTORS%208054460 (last accessed April 7, 2024).

navigation, and remote diagnostics systems. OnStar serves customers in the United States.[3]
OnStar is a wholly owned subsidiary of GM.[4]   OnStar is a Delaware limited liability
company headquartered in Detroit, Michigan.[5]

7.      Defendant LexisNexis Risk Solutions Inc. ("LexisNexis") is a decision
analytics provider for industries around the globe including financial services,
retail/ecommerce, logistics and telecommunications.[6]   LexisNexis is a Delaware
corporation headquartered in Alpharetta, Georgia.[7]

**JURISDICTION AND VENUE**

8.      This Court has original subject matter jurisdiction under the Class Action
Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than
100 putative class members and the amount in controversy exceeds $5,000,000, exclusive
of interest and costs. Minimal diversity is established because Plaintiff (and many members
of the class) are citizens of states different than that of any of the Defendants.

---

[3] Bloomberg, "OnStar LLC", https://www.bloomberg.com/profile/company/0221752D:US (last accessed April 7, 2024).
[4] GMC PressRoom, "General Motors Expands Access of OnStar Vehicle Insights to Non-GM Vehicles", https://media.chevrolet.com/media/me/en/gmc/home.detail.html/content/Pages/news/ca/en/2022/mar/0726-onstar.html (last accessed April 7, 2024).
[5] State of Florida, Division of Corporations, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=ONSTAR%20M090000002060&aggregateId=forl-m09000000206-a043e993-070d-45fc-b49c-0fddd5dc67dc&searchTerm=onstar&listNameOrder=ONSTAR%20F000000015430 (last accessed April 7, 2024).
[6] LexisNexis Risk Solutions, https://risk.lexisnexis.com/ (last accessed April 7, 2024).
[7] State of Florida, Division of Corporations, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=LEXISNEXISRISKSOLUTIONS%208338174&aggregateId=forp-833817-10d16dc1-e365-41b6-ab23-1c29a838ae84&searchTerm=lexisnexis&listNameOrder=LEXISNEXISCLAIMSSOLUTIONS%20F150000034020 (last accessed April 7, 2024).

9.     This Court has personal jurisdiction over each of the Defendants because each of them regularly conducts substantial business in this District.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2) and 1391(b)(2), because substantial part of the events giving rise to the claims emanated from activities within this District.

## FACTUAL ALLEGATIONS

*Modern Cars Collect Voluminous Data About Their Users*

11.     Mozilla Foundation is an American nonprofit dedicated to privacy protection.[8]  In 2023, Mozilla Foundation conducted a research project on data collection practices of car manufacturers.  Its researchers were shocked by their findings.  In the language of the Mozilla Foundation, "modern cars are a privacy nightmare", and car manufactures have "shifted their focus from selling cars to selling data."[9]

12.     As Mozilla Foundation notes, "There's probably no other product that can collect as much information about what you do, where you go, what you say, and even how you move your body […] than your car. And that's an opportunity that ever-

---

[8] Mozilla Foundation – Homepage, https://foundation.mozilla.org/en/ (April 7, 2024).
[9] Jen Caltrider, Misha Rykov, Zoe MacDonald (Sept 6, 2023), "What Data Does My Car Collect About Me and Where Does It Go?", Mozilla Foundation, https://foundation.mozilla.org/en/privacynotincluded/articles/what-data-does-my-car-collect-about-me-and-where-does-it-go/ (last accessed April 7, 2024).

industrious car-makers aren't letting go to waste. […] From your philosophical beliefs to recordings of your voice, your car can collect a whole lotta information about you."[10]

13.     Beyond non-personal data, such as fuel efficiency, tire pressure and engine performance, today's car manufacturers collect sensitive PII, such as GPS locations and frequently used routes, as well as information regarding one's driving style, acceleration and braking patterns, phone contacts, music preferences and call logs.[11]

14.     This data collection effort has attracted regulatory attention.  The California Privacy Protection Agency ("CPPA") said its enforcement division would review manufacturer's treatment of data collected from vehicles, including locations, smartphone connections and images from cameras.[12]

15.     Ashkan Soltani, CPPA's executive director, said in a statement: "Modern vehicles are effectively connected computers on wheels. They're able to collect a wealth of information via built-in apps, sensors, and cameras, which can monitor people both inside and near the vehicle."  He added that CPPA's Enforcement Division was "making inquiries into the connected vehicle space to understand how these companies are complying with California law when they collect and use consumers' data."

---

[10] *Id.*
[11] AutiPI.io, "What Kind of Data Is My Vehicle Collecting?" (Updated 18 Mar, 2024), https://www.autopi.io/blog/the-meaning-of-vehicle-data/ (last accessed April 7, 2024).
[12] Joseph Menn, "California privacy regulator's first case: probing internet-connected cars" Washington Post (August 1, 2023)https://www.washingtonpost.com/technology/2023/07/31/cppa-privacy-car-data/ (last accessed April 7, 2024).

16.     Similarly, on February 28, 2024, Senator Edward J. Markey of
Massachusetts, a member of the Senate Commerce, Science and Transportation
Committee, urged the Federal Trade Commission to investigate the data privacy practices
of auto manufacturers.  In his letter to FTC Chair Khan, Senator Markey explained that
"automakers are collecting large amounts of data on drivers, passengers and even people
outside the vehicle, with little to no oversight."[13]

17.     A recent *New York Times* report explains that for some time now, insurance
companies have offered incentives to people who install dongles in their cars or
download smartphone apps that monitor their driving.  However, drivers have been
historically reluctant to participate in these programs.  Faced with this user reluctance,
vehicle manufacturers, who can collect such data directly from the vehicles, have offered
such data for sale directly to the insurance industry.[14]

18.     In particular, according to the *New York Times*, "[i]n recent years,
automakers, including G.M., Honda, Kia and Hyundai, have started offering optional
features in their connected-car apps that rate people's driving. Some drivers may not

---

[13] "Senator Markey Urges FTC to Investigate Invasive Data Privacy Practices of Automakers" (February 28, 2024)
https://www.markey.senate.gov/news/press-releases/senator-markey-urges-ftc-to-investigate-invasive-data-privacy-practices-of-automakers (last accessed April 7, 2024).
[14] Kashmir Hill, "Automakers Are Sharing Consumers' Driving Behavior with Insurance Companies" New York
Times (March 11, 2024), https://www.nytimes.com/2024/03/11/technology/carmakers-driver-tracking-insurance.html#:~:text=Kia%2C%20Subaru%20and%20Mitsubishi%20also,from%20over%2010%20million%20vehicles.%E2%80%9D (April 7, 2024).

realize that, if they turn on these features, the car companies then give information about how they drive to data brokers like LexisNexis."

19.     As this case shows, such data is collected and offered for sale by Defendants to third parties, without Class Members' consent, whether or not any particular features are turned on, and in violation of statutory and common law principles.

***Defendants GM and OnStar Collect Vast Amounts of Information About Its Customers From Their Vehicles and Resell It to Data Brokers, including Defendant LexisNexis***

20.     Defendant GM is one of vehicle manufacturers who collect and sell vast amounts of PII about their customers to data brokers, such as Defendant LexisNexis, who resell it to insurance companies.

21.     The above-referenced *New York Times* report quotes Kenn Dahl, a GM customer, who was shocked when his car insurance jumped by 21% in 2022, despite the fact that he had never been responsible for an accident. Dahl later found out that Defendant LexisNexis had compiled a 258-page report that listed each time he or his wife had driven their leased Chevrolet Bolt over the previous six months.  Dahl's information was requested by eight different insurance companies from LexisNexis over the previous month.[15]

---

[15] *Id.*

22.     On August 21, 2019, Defendant LexisNexis announced that Defendant GM selected it as "Preferred Insurance Data Partner."  Its press release read, in part: "LexisNexis® Risk Solutions, a leading provider of data, analytics and technology, today announced that General Motors (NYSE: GM) has selected the LexisNexis® Telematics Exchange, a device-agnostic telematics ecosystem, as its preferred portal for sharing consumer-approved connected car data with insurers."  LexisNexis stated: "The mission of the Telematics Exchange is to help save consumers time and money, and enhance safety with programs such as proactive, personalized insurance discount offers and safe driving initiatives."  It noted that GM was "the first automaker to offer connected vehicles," and therefore GM's addition to LexisNexis' Telematics Exchange marked an important step in its growth.  LexisNexis claimed that it processes the data collected from vehicles in a way that enables it to be "more seamlessly integrated into participating insurers' usage-based insurance (UBI) programs."[16]

23.     On March 20, 2024, GM announced that it was ending its relationship with LexisNexis and another data broker.  In a statement released that day, GM spokesman stated: "As of March 20th, OnStar Smart Driver customer data is no longer being shared with LexisNexis or Verisk. Customer trust is a priority for us, and we are actively evaluating our privacy processes and policies."[17]  The statement was silent as to the fate

---

[16] "LexisNexis Risk Solutions Selected by GM as Preferred Insurance Data Partner", LexisNexis Risk Solutions (August 21, 2019), https://risk.lexisnexis.com/about-us/press-room/press-release/20190821-gm-partnership (last visited April 7, 2024).
[17] Jamie L. LaReau, "GM cuts ties with 2 data firms amid heated lawsuit over driver data", https://www.freep.com/story/money/cars/general-motors/2024/03/22/gm-data-firms-lexis-nexis/73057931007/ (last accessed April 7, 2024).

of data transmitted by GM to LexisNexis prior to March 20, 2024, or PII collected

outside of the OnStar Smart Driver application, which suggests that such data continues

to be collected, remains in LexisNexis' possession and continues to be sold to insurers.

***Defendants' Unauthorized Data Collection and Dissemination***

24.    The practices described above constitute Defendants' unlawful collection

and dissemination of Plaintiff's and Class Members' PII, including but not limited to: their

vehicles' location, speed, direction, acceleration and breaking, swerving/cornering events,

images and voice data.

25.    As a result of the practices described above, Defendants shared with third

parties, including insurance companies, Plaintiff's and Class Members' highly sensitive

PII, which caused Plaintiff and Class Members monetary harm.

26.     On information and belief, Defendants continue to collect, hold and sell for

profit this PII, depriving Plaintiff and Class Members of informational autonomy, invading

their privacy and appropriating the economic value of this information.

***Defendants' Privacy Policy Evolution***

27.    In connection with OnStar equipment installed on GM vehicles, Defendants

maintain a "Privacy Statement" which purports to describe, in obscure and convoluted

terms, the multiple uses to which Defendants can put Class Members' PII, including

information about their location and movements.

28.    The Privacy Statement has been amended multiple times in the past decade.

The amendments vastly expanded its scope and purported to enable Defendants to collect

Plaintiffs' location, movement and other information *without their consent*, contrary to

California statute and common law.

29.    The evolution of relevant provisions is summarized below (emphasis

added):

| Privacy Statement (Year) | Excerpts from Relevant Provisions |
|---|---|
| 2011[18] | **INFORMATION ONSTAR COLLECTS**<br><br>[...]<br><br>• The information we may get from your car includes: information about your car's operation, including such things as diagnostic trouble codes, oil life remaining, tire pressure, fuel economy and odometer readings; information about collisions involving your car, the direction from which your car was hit, which air bags have deployed, and safety belt usage; information about your use of the car and its features, such as whether you have paired a mobile device with your car) ; information about when your car's ignition is turned on or off and when your fuel is refilled; and **in the limited circumstances listed below, the location and approximate GPS (global positioning satellite) speed of your car**: when there is a request for service made from inside your car (for example when you request driving directions); when there is an airbag deployment or automatic crash response (so we can inform emergency service providers); when there is a request for Stolen Vehicle Assistance (to assist law enforcement in the recovery of your car); when needed to protect the safety of you or others (for example, to locate a missing person); **when needed by us or our suppliers for our quality, research or troubleshooting purposes**; or as may be required by law |
| 2014[19] | **Information Collected by OnStar**<br>OnStar collects the following types of information about you and your vehicle: |

---

[18] https://www.onstar.com/content/dam/onstar/na/us/en/index/legal/legal-privacy-statement-jan012011/02-pdfs/OnStar-Privacy-Statement-Jan012011.pdf.html<br>[19] https://www.onstar.com/content/dam/onstar/tcps/html/us/20140601/privacy_statementold.html

|  | ·     Account Information, like your contact and billing information and information about how you use certain OnStar services and our website(s);<br><br>·     Vehicle-Related Information, like diagnostic information, odometer, oil life remaining, tire pressure, and information about collisions involving your vehicle; and<br><br>·     Driving Information, like **location, GPS speed**, safety belt usage, and **other similar information about how the vehicle is used**.<br><br>We collect this information from a variety of sources, like you, your vehicle (when the OnStar system is active), our website(s), **and third parties**.<br><br><br>**Sharing of Information – Driving Information (location, GPS speed, safety belt usage and other similar information about how the vehicle is used)**<br>We limit who we share your Driving Information with and the purposes for which it can be used. For example, Driving Information may be shared with:<br>·     emergency service providers and law enforcement when you need emergency services or if your vehicle is stolen;<br>·     GM for product safety or security purposes, to protect the safety of your or others, or to help maintain the proper operation of your vehicle;<br>·     **our service providers to help us provide or evaluate certain services**; and<br>·     any third party to comply with legal requests or to protect the rights and safety of you or others. |
| **2017**[20] | **INFORMATION WE MAY COLLECT**<br>[…]<br><br>•    Information about the use of your vehicle, including operational and safety related information: such as **GPS location, speed**, air bag deployments, crash avoidance alerts, impact data, safety system status, **braking and swerving/cornering events**, event data recorder (EDR) data, seat belt settings, vehicle |

---

[20] https://www.onstar.com/content/dam/onstar/tcps/html/us/20180227/privacy_statement.html

| | |
|---|---|
| | direction (heading), camera image and sensor data, **voice command information**, stability control or anti-lock events, security/theft alerts, **infotainment system usage**, and **WiFi data usage**. <br><br> **HOW WE MAY SHARE YOUR INFORMATION** <br><br> **Business Partners and Independent Third Parties**:  With business partners, such as SiriusXM in connection with the satellite radio hardware installed on your vehicle and the associated products and services provided by SiriusXM, research institutes,  for research and development purposes (for example, improving highway safety),  dealers, fleet or rental companies, for service maintenance of your vehicle, and marketing activities. **We may also share data with third parties where you have elected to receive a service from them and authorized them to request data from GM** (for example, financial organizations who offer financing for the purchase or lease of GM vehicles **or usage based insurance providers**) or for promoting joint marketing programs. |
| **2018**[21] | **INFORMATION WE MAY COLLECT** <br><br> •      Information about the use of your vehicle, including operational and safety related information: such as **GPS location, speed**, air bag deployments, crash avoidance alerts, impact data, safety system status, **braking and swerving/cornering events**, event data recorder (EDR) data, seat belt settings, **vehicle direction (heading), camera image and sensor data, voice command information**, stability control or anti-lock events, security/theft alerts, and **infotainment system and WiFi data usage**. <br><br> **HOW WE MAY SHARE YOUR INFORMATION** <br><br> **Business Partners and Independent Third Parties**:  With business partners, such as SiriusXM, in connection with their products and services; research institutes, for research and development purposes (for example, improving highway safety); dealers, fleet or rental companies, for service maintenance of your vehicle.  We may also share data with third parties for marketing activities (with necessary consents) **or where you have elected** |

---

[21] https://www.onstar.com/content/dam/onstar/tcps/html/us/20180501_cl/privacy_statement.html

| | to receive a service from them and/or authorized them to request data from GM (for example, financial organizations who offer financing for the purchase or lease of GM vehicles or usage based insurance providers). |
|---|---|
| **2020**[22] | As above (see: 2018 version). |
| **2021**[23] | As above (see: 2018 version). |
| **2022**[24] | As above (see: 2018 version). |
| **2023**[25] | As above (see: 2018 version). |

30.    In short, an important change occurred between the 2017 and 2018 Privacy

Policies:

a.   The 2017 Privacy Policy provided that location, direction, camera images, voice commands and other PII would be shared *only with GM customers' consent* ("where you have elected to receive a service from them ***and*** authorized them to request data from GM");

b.   In contrast, starting in 2018, Privacy Policy provides that location, direction, camera images, voice commands and other PII can be shared *without GM customers' consent*: "or where you have elected to receive a service from them ***and/or*** *authorized them* to request data from GM."

---

[22] https://www.onstar.com/content/dam/onstar/tcps/html/us/Jan_2020/privacy_statement.html
[23] https://www.onstar.com/content/dam/onstar/tcps/html/us/20180501_7012021/privacy_statement.html
[24] https://www.onstar.com/content/dam/onstar/na/us/en/index/legal/legal-privacy-statement-053122/02-pdfs/privacy_statement.pdf.html
[25] https://www.onstar.com/content/dam/onstar/na/us/en/index/legal/privacy-statement/02-pdfs/US-Connected-Services-Privacy-Statement(010123-final).pdf.html

31.     Thus, by switching Privacy Policy language from "and" (2017) to "and/or" (2018), Defendants admitted that, start at the latest in 2018, they would share GM customers' data even without customers' consent, so long as customers have "elected to receive a service" from a third party such as a "usage based insurance provider."

***The Experiences and Injuries of Plaintiff and Class Members***

32.     Plaintiff and Class Members are current and former owners and lessees of vehicles manufactured by GM, with OnStar technology installed.

33.     Plaintiff Valencia is the owner of a 2017 Buick Encore, which he bought from a GM dealer in 2017.  This vehicle is equipped with OnStar technology.

34.     Unbeknownst to Plaintiff and Class Members, Defendant GM and OnStar were collecting vast amounts of information including their location, speed and driving habits – even minute details such as acceleration, deceleration and "cornering" events – as well as images and sounds captured by their vehicles, and selling it to databrokers, including Defendant LexisNexis, who then sold it to insurance companies.

35.      Defendants inflicted injuries upon Plaintiff and Class Members.  Without Plaintiff's and Class Members' consent, Defendants shared sensitive PII, including customers' vehicles locations, direction, acceleration / deceleration / curving events, camera images and voice commands, with third parties such as insurance companies.

36.     All Class Members were injured when Defendants caused their PII to be collected from their vehicles and sold without their consent.

37.     Plaintiff and Class Members suffered actual injury from having their PII collected from their vehicles and sold to third parties including, but not limited to, (a)

damage to and diminution in the value of their PII—a form of property that Defendants obtained from Plaintiff; (b) violation of their privacy rights; (c) the likelihood of future theft of their PII from these third parties.

38.     In addition, Plaintiff and Class Members overpaid for their vehicles as a result of not knowing that these vehicles would collect and transmit highly intimate details of their movements to Defendants, and Defendants would share them with third parties without Class Members' consent.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action individually and on behalf of all other persons similarly situated ("the Class") under Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4).

40.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All individual residents of California who owned or leased GM vehicles manufactured on or after January 1, 2011 and equipped with OnStar technology.

41.     The Class defined above is readily ascertainable from public records and from information in Defendants' possession. Thus, such identification of Class Members will be reliable and administratively feasible.

42.     Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants or their parent has a controlling interest, and their current or former officers and directors; (3)

persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

43.     Plaintiff reserves the right to amend or modify the Class definition—including potential Subclasses—as this case progresses.

44.     Plaintiff and Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

45.     **<u>Numerosity</u>**. The Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of tens of thousands of individuals who reside in the U.S. and purchased GM vehicles equipped with OnStar technology.

46.     **<u>Commonality</u>**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

      a.     If Defendants unlawfully collected and disseminated Plaintiff's and Class Members' PII contrary to California Invasion of Privacy Act;

      b.     If Defendants unlawfully collected and disseminated Plaintiff's and Class Members' PII contrary to California Comprehensive Computer Data Access and Fraud Act;

c.    If Defendants' collection and dissemination of Plaintiffs' PII was unfair within the meaning of California's Unfair Competition Law;

d.    If Plaintiff and Class Members did not obtain the benefit of their bargain when they purchased their vehicles without Defendants disclosing to them that they were collecting and disseminating their PII;

e.    If Plaintiff and Class Members were injured as a proximate cause or result of Defendants' misconduct described in this Complaint; and

f.    If Plaintiff and Class Members are entitled to compensatory damages, treble damages, reimbursement of out-of-pocket costs and/or injunctive relief.

47.    **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was collected in the same way, through OnStar technology, and disseminated in the same way by the Defendants to insurance companies and others. Moreover, all Plaintiff and Class Members were subjected to Defendants' uniformly illegal and impermissible conduct.

48.    **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating complex data privacy class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

17

49.     **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff and Class Members' data was collected in the same way from GM vehicles and unlawfully and inadequately shared, using OnStar technology, with data brokers such as Defendant LexisNexis, and then with insurance companies. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

50.     **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

51.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

52.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

53.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above, including in paragraph 46.

54.     Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**FIRST CAUSE OF ACTION**
**Violations of California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.***
**("CIPA")**
**(On Behalf of Plaintiff and the Class)**

55.     Plaintiff re-alleges and incorporates by reference paragraphs 1-54 of the Complaint as if fully set forth herein.

56.     California Invasion of Privacy Act ("CIPA"), codified at Cal. Pen. Code §§ 630, *et seq.*, recognizes that "the invasion of privacy resulting from the continual and increasing use" of electronic devices "cannot be tolerated in a free society."  In an effort to "protect the right of privacy" of its citizens, California legislated as follows: "No person or entity in this state shall use an electronic tracking device to determine the location or movement of a person." (637.7(a))

57.     By collecting and storing data which reveals the location and movement (including: location, speed, direction, breaking and swerving/cornering events)  of the

Plaintiff's and Class Members' vehicles, the Defendants breached this section. Defendants GM and OnStar unlawfully tracked the Plaintiff's and Class Members' vehicles' location and movement, and then provided such location data to Defendant LexisNexis, who in turn sold such data to insurance companies.

58.    Plaintiff and Class Members suffered actual injury from having their PII collected from their vehicles and sold to third parties including, but not limited to, (a) damage to and diminution in the value of their PII—a form of property that Defendants obtained from Plaintiff; (b) violation of their privacy rights; (c) the likelihood of future theft of their PII from these third parties.

59.    In addition, Plaintiff and Class Members overpaid for their vehicles as a result of not knowing that these vehicles would collect and transmit highly intimate details of their movements to Defendants, and Defendants would share them with third parties without Class Members' consent.

60.    CIPA further provides: "637.2(a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation; (2) Three times the amount of actual damages, if any, sustained by the plaintiff."

61.    Accordingly, the Plaintiff and the Class Members are entitled to:

    a. The greater of $5,000 or three times the damages sustained by Class Members; and

b.   Injunctive relief prohibiting the Defendants from collecting the vehicle location information described above, and mandating them to delete the information they have obtained to date.

**SECOND CAUSE OF ACTION**
**Violation of California's Comprehensive Computer Data Access and Fraud Act, Cal. Pen. Code § 502, *et seq.* ("CDAFA")**
**(On Behalf of Plaintiff and the Class)**

62.   Plaintiff re-alleges and incorporates by reference paragraphs 1-54 of the Complaint as if fully set forth herein.

63.   California Penal Code § 502 ("CDAFA"), sections (11)(c)(2) and (e)(1), provide for a private cause of action against any person who "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."

64.   The private right of action is available to the "owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c)." The private right of action includes "compensatory damages" and "injunctive relief."

65.   Plaintiff and Class Members are owners of the computers or computer systems embedded in their GM vehicles. Their computers, computer systems and data were accessed without their permission by Defendants GM and OnStar, contrary to CDAFA.

21

66.    Plaintiff's and Class Members' data was copied and made use of by all Defendants, contrary to CDAFA.

67.    Accordingly, pursuant to CDAFA, Plaintiff and Class Members are entitled to compensatory damages and injunctive relief.

68.    Plaintiff and Class Members suffered actual injury from having their PII collected from their vehicles and sold to third parties including, but not limited to, (a) damage to and diminution in the value of their PII—a form of property that Defendants obtained from Plaintiff; (b) violation of their privacy rights; (c) the likelihood of future theft of their PII from these third parties.

69.    In addition, Plaintiff and Class Members overpaid for their vehicles as a result of not knowing that these vehicles would collect and transmit highly intimate details of their movements to Defendants, and Defendants would share them with third parties without Class Members' consent.

70.    Plaintiff and Class Members are also entitled to injunctive relief including, but not limited to:

a. An order enjoining Defendants from continuing to collect Plaintiff's and Class Members location and vehicle data (including: location, speed, direction, breaking and swerving/cornering events, and image and voice data), and other PII, recorded by their vehicles, store it or offer it for sale to third parties; and

b. An order mandating Defendants to delete all location and movement (including: location, speed, direction, breaking and swerving/cornering

events, and image and voice data), and other PII, which they collected from

Plaintiff's and Class Members' vehicles.

### THIRD CAUSE OF ACTION
**Violation of California's Unfair Competition Law, California Business and
Professions Code § 17200, *et seq.* ("UCL")
(On Behalf of Plaintiff and the Class)**

71.  Plaintiff re-alleges and incorporates by reference paragraphs 1-54 of the

Complaint as if fully set forth herein.

72.  UCL §17200 prohibits "unfair competition" which it defines, among others,

as "unlawful, unfair or fraudulent business act or practice."  Defendants' conduct was both

unlawful and unfair:

a.  Unlawful: Defendants' conduct is unlawful, because it violated CIPA and/or

CDAFA, as discussed above.  In unlawfully tracking the Plaintiff's and Class

Members' vehicles' location and vehicle data (including: location, speed,

direction, breaking and swerving/cornering events, and image and voice

data) (and then selling such information to insurance companies without

Class Members' consent), the Defendants acted unlawfully and are subject

to both damages and injunctive relief pursuant to UCL.

b.  Unfair: Defendant's conduct was also unfair.  It was unfair to record vast

amounts of information about Plaintiff's and Class Members' location and

vehicle data (including: location, speed, direction, breaking and

swerving/cornering events, and image and voice data), store them and offer

them for sale to insurers, all without Plaintiff's and Class Members' consent.

23

73.    UCL §17203 provides for the availability of injunctive relief as against defendants engaged in "unfair competition."  Plaintiff and Class Members are entitled to injunctive relief including, but not limited to:

      a.    An order enjoining Defendants from continuing to collect Plaintiff's and Class Members location and vehicle data (including: location, speed, direction, breaking and swerving/cornering events, and image and voice data), and other PII, recorded by their vehicles, store it or offer it for sale to third parties; and

      b.    An order mandating Defendants to delete all location and movement (including: location, speed, direction, breaking and swerving/cornering events, and image and voice data), and other PII, which they collected from Plaintiff's and Class Members' vehicles.

74.    UCL §17203 provides for a private right of action for any person who has suffered "injury in fact and has lost money or property as a result of the unfair competition." Plaintiff and Class Members are entitled to compensation pursuant to UCL §17203.

75.    As described above, Plaintiff and Class Members suffered injury in fact, and lost property, from having their PII collected from their vehicles and sold to third parties including, but not limited to, (a) damage to and diminution in the value of their PII—a form of property that Defendants obtained from Plaintiff; (b) violation of their privacy rights; (c) the likelihood of future theft of their PII from these third parties.

76.    In addition, as described above, Plaintiff and Class Members suffered injury and lost money when they overpaid for their vehicles as a result of not knowing that these

vehicles would collect and transmit highly intimate details of their movements to Defendants, and Defendants would share them with third parties without Class Members' consent.

**FOURTH CAUSE OF ACTION**
**Intrusion Upon Seclusion**
**(On Behalf of the Plaintiff and the Class)**

77.     Plaintiff re-alleges and incorporates by reference paragraphs 1-54 of the Complaint as if fully set forth herein.

78.     Defendants intentionally intruded upon the seclusion of or private affairs of the Plaintiff and Class Members.  They did so by collecting and selling highly intimate details of Plaintiff and Class Members' movements and vehicle use, including location, speed, direction, camera images, voice commands, acceleration / deceleration and curving events.

79.     Such an intrusion is highly offensive to a reasonable person.  Reasonable persons would expect their location and details of their driving to remain private, and not to be shared with third parties without their express consent.

80.     Plaintiff and Class Members similarly expected that their PII, including location and movements of their vehicles, would not be collected or shared with third parties without their consent.

81.     Defendants' conduct caused harm to Plaintiff and Class Members.  As described above, Plaintiff and Class Members suffered actual injury from having their PII collected from their vehicles and sold to third parties including, but not limited to, (a)

damage to and diminution in the value of their PII—a form of property that Defendants obtained from Plaintiff; (b) violation of their privacy rights; (c) the likelihood of future theft of their PII from these third parties.

82.     In addition, Plaintiff and Class Members overpaid for their vehicles as a result of not knowing that these vehicles would collect and transmit highly intimate details of their movements to Defendants, and Defendants would share them with third parties without Class Members' consent.

83.     Plaintiff and Class Members are entitled to compensatory, consequential and nominal damages suffered as a result of the intrusion upon seclusion.

84.     Plaintiff and Class Members are also entitled to injunctive relief including, but not limited to:

   a.  An order enjoining Defendants from continuing to collect Plaintiff's and Class Members location and vehicle data (including: location, speed, direction, breaking and swerving/cornering events, and image and voice data), and other PII, recorded by their vehicles, store it or offer it for sale to third parties; and

   b.  An order mandating Defendants to delete all location and movement (including: location, speed, direction, breaking and swerving/cornering events, and image and voice data), and other PII, which they collected from Plaintiff's and Class Members' vehicles.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, requests the following relief:

A.   An Order certifying this action as a class action and appointing Plaintiff as Class representative, and the undersigned as Class Counsel;

B.   An order enjoining Defendants from: (i) continuing to collect Plaintiff's and Class Members location and vehicle data (including: location, speed, direction, breaking and swerving/cornering events, and image and voice data), and other PII, recorded by their vehicles, (ii) storing it or (iii) offering it for sale to third parties; and

C.   A mandatory injunction requiring that Defendants to delete all location and vehicle data (including: location, speed, direction, breaking and swerving/cornering events, and image and voice data) and other PII unlawfully collected from Plaintiffs and Class Members;

D.   An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

E.   An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.   An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

G.   Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

H.    For all other Orders, findings, and determinations identified and sought in this

Complaint; and

I.    Such other and further relief as this court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for

any and all issues in this action so triable as of right.

Dated: April 12, 2024                    Respectfully Submitted,

*/s/   Arthur Petrousian*
Arthur Petrousian
California Bar No: 270358
apetrousian@forthepeople.com
**MORGAN & MORGAN**
633 W 5th St, Ste 2200
Los Angeles, CA, 90071-2041
T: (213) 787-8590

John A. Yanchunis*
Florida Bar No.: 324681
JYanchunis@forthepeople.com
Ronald Podolny*
ronald.podolny@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, FL 33602
T: (813) 223-5505
F: (813) 223-5402

John G. Emerson*
jemerson@emersonfirm.com
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive, Suite 300
Houston, TX 77042-2754
Tel.  800.551.8649

Fx.  501.286.4659

*Pro hac vice forthcoming*

**Counsel for Plaintiff and the Class**